WARREN EASTRIDGE, Respondent, v. KENNETT
CYPRESS & HARDWOOD LUMBER COM-
PANY, Appellant.

**St. Louis Court of Appeals, March 2, 1915.**

1. **MASTER AND SERVANT: Injury to Servant: Safe Place to Work: Sufficiency of Evidence.** In an action for injuries sustained by a servant by stepping on a nail which protruded from a partially imbedded plank, while walking backwards in the performance of his duty, evidence *held* to warrant a finding that the plank could have been discovered by defendant, by the exercise of ordinary care, and that, having so discovered it, defendant should have anticipated that its servants were likely to be injured by stepping thereon, and hence the question of whether or not it was negligent was for the jury.

2. ———: ———: ———: **Duty of Master.** It is the duty of the master to exercise ordinary care to render the place in which his servant is required to perform his work as reasonably safe as the circumstances of the situation and the character of the work to be performed will permit, and the precepts of ordinary care require that he should anticipate such injury to his servant as is likely to befall him, within the range of reasonable probability.

3. ———: ———: **Assumption of Risk.** A servant assumes the risk only of what is liable to happen on account of the nature of the business, when the master has used reasonable care to avert such result, and he never assumes the risks arising from the master's negligence.

4. ———: ———: **Instructions: Failure to Submit Specific Negligence.** In an action for injuries sustained by a servant, where the petition specified in what particular defendant had failed to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work, an instruction which authorized a recovery if the injury was due to the negligence of defendant "in not furnishing plaintiff with a reasonably safe place to work," was erroneous, in that it failed to require the jury to find the specific negligence charged.

5. ———: ———: **Obligation of Master: Instructions.** In an action for personal injuries sustained by a servant, an instruction which authorizes a recovery if the injury was due to the negligence of defendant in not furnishing plaintiff with a reasonably safe place to work, is erroneous, as imposing on defend-

ant the absolute duty to furnish a reasonably safe place to work, when its obligation extends no further than to exercise ordinary care to that end; but if the instructions, when construed together, are otherwise sufficiently definite on this score, such error might be held to be innocuous.

6. NEGLIGENCE: Instructions: Necessity of Submitting Specific Negligence. In an action for personal injuries, where the petition contains specific assignments of negligence, an instruction which permits a recovery without requiring the jury to find such specific negligence is erroneous.

7. INSTRUCTIONS: Erroneous Instructions: Aider by Other Instructions. An instruction which is erroneous because of its generality may be rendered harmless when construed in connection with the other instructions.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*Fort & Zimmerman* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence at the close of plaintiff's case and at the close of all the evidence in the case—(a) There is no evidence that the water had been down long enough to clean off the yard, or that the end of the plank with the protruding nail was sufficiently exposed to become noticeable, without the exercise of extraordinary care on the part of defendant. (b) Because there is no evidence that the water had been down long enough for defendant to discover such pieces of plank, as the exposed board in evidence, the water still standing in the low parts of the yard. (c) Because plaintiff assumed the risk of being injured on the piling yard in the manner charged in his petition, and because the danger of stepping upon a nail while working upon said pole and piling yard, or of being injured by a piece of plank or wood which might float upon defendant's yard from the woods, was a danger incident

to plaintiff's employment and assumed by him. Wendall v. Railroad, 75 S. W. 689; Brandt v. Kansas City Breweries Co., 159 Mo. App. 568; Harris v. Railroad, 146 Mo. App. 524; Jordan v. Railroad, 136 Mo. App. 192; Jones v. Pioneer Cooperage Co., 134 Mo. App. 324; Saversnick v. Schwatzchild & Sulzberger, 141 Mo. App. 513; Rigsby v. Oil Well Sup. Co., 165 Mo. App. 523. (2) The court erred in giving instruction number 2, plaintiff, because: (a) Said instruction imposed upon defendant a higher duty than required by law, in that it bound defendant to the exercise of more than ordinary care, or extraordinary care, to furnish plaintiff a reasonably safe place in which to work. McElhiny v. Friedman Shelby Shoe Co., 158 Mo. App. 318; Henson v. Pascola Stave Co., 151 Mo. App. 234; Organ v. Railroad, 142 Mo. App. 248; Bennett v. Crystal C. L. Co., 146 Mo. App. 565; Bradley v. Railroad, 138 Mo. 293; Haas v. American Car & F. Co., 176 Mo. App. 314. (b) Because said instruction is not sufficiently specific to advise the jury as to what matters in evidence they would consider in passing upon defendant's negligence in failing to furnish plaintiff with a safe place to work. Delo v. Old Dominion M. Co., 141 S. W. 689; Schaff v. St. Louis Basket & Box Co., 151 Mo. App. 35; Allen v. St. Louis Transit Co., 183 Mo. 411; Hall v. Railroad, 165 Mo. App. 114. (3) The court erred in refusing defendant's instruction numbered 2a because: (a) There is no evidence that defendant knew, or had any knowledge, that the plank in question was on its pole and piling yard. (b) Because plaintiff alleges in his petition that defendant negligently and carelessly permitted toggles and other timber to become embedded in the wet, low and marshy ground, etc. Honea v. Railroad, 245 Mo. 621; 6 Words & Phrases Judicially Defined, p. 5317; State v. Robinson, 55 Minn. 169. (4) The court erred in refusing to give instruction numbered 2b offered by the defendant. See authorities cited upder point 3. (5) The

court erred in refusing instructions numbered 2c by the defendant, because said instruction properly declared the law of the case and submitted the defense to which defendant was entitled under the pleading and the evidence. See authorities submitted under point 3.

*Bradley & McKay* for respondent.

(1) (a) Appellant cannot complain of its first assignment, that the court erred in overruling its demurrer at the close of plaintiff's case, because if there is any evidence tending to make an issue of fact, properly raised by the pleadings, these issues are questions for the jury. Appellant has failed to make the action of the trial court in overruling its demurrer at the close of all the evidence, one of its assignments here, which it must do in order to bring this court's attention to the error complained of. It is only when the evidence is such that there can be no two opinions on the subject that the court should sustain a demurrer. Saller v. Shoe Co., 130 Mo. App. 722; Erickson v. Railroad, 171 Mo. 647; Campbell v. Railroad, 175 Mo. 161; Holden v. Railroad, 108 Mo. App. 665; Charlton v. Railroad, 200 Mo. 441; Johnson & Co. v. Ice & Refrigerating Co., 143 Mo. App. 455; King v. Railroad, 143 Mo. App. 291; Bradford v. Railroad, 136 Mo. App. 705; Lawrence v. Ice Company, 119 Mo. App. 323; Doyle v. M. K. & T. Trust Co., 140 Mo. 15; O'Melia v. Railroad, 115 Mo. 205; Kinlan v. Railroad, 216 Mo. 155; Heine v. Railroad, 144 Mo. App. 443; Bluedorn v. Railroad, 108 Mo. 448; Baird v. Railroad, 146 Mo. 281; Hicks v. Hammond Packing Co., 171 S. W. 937. (b) Respondent concedes that he assumed the ordinary risks incident to the employment in which he was engaged, but he did not assume any risks which it was his master's duty to eliminate or avoid by the exercise of ordinary care. It was his master's duty to

exercise ordinary care to furnish him a reasonably safe place to work. Plaintiff testified that this piece of timber in which the nail was, could have been seen, had they been looking for it; therefore if appellant had exercised ordinary care in examining or inspecting its yard, this nail would have been discovered, and plaintiff's injury would not have been caused, and he did not assume this risk. Charlton v. Railroad, 200 Mo. 433; Blanton v. Dold, 109 Mo. 75; Doyle v. M. K. & T. Trust Co., 140 Mo. 12; King v. Railroad, 143 Mo. App. 298; Brady v. Railroad, 206 Mo. 509; Garner v. Met. Street Ry. Co., 128 Mo. App. 405; Settle v. Railroad, 127 Mo. 336; Lee v. Railroad, 112 Mo. App. 372; Bradley v. Northern Central Coal Co., 167 Mo. App. 177; Self v. White, 155 S. W. 840; Rowden v. Mining Co., 136 Mo. App. 376; Shortel v. City of St. Joe, 104 Mo. 114; Selfeinstein v. Medart, 136 Mo. 595. (2) (a) The court did not err in giving instruction number 2. The court directed the jury that before they could find for the respondent they must find that the appellant had been guilty of negligence and carelessness in the discharge of its duty to exercise ordinary care to furnish respondent a reasonably safe place to work. Its duty was to exercise ordinary care to furnish respondent a reasonably safe place to work; if it was negligent and careless in the discharge of this duty which the jury found it was, then of course it did not exercise ordinary care, because the existence of negligence implies the absence of care. There was no duty imposed on the appllant company by this instruction, not imposed by the law. Blanton v. Dold, 109 Mo. 75; Doyle v. M. K. & T. Trust Co., 140 Mo. 12; Brady v. Railroad, 206 Mo. 509; Baxter v. Campbell Lumber Co., 171 S. W. 955. (b) If the master is negligent the question of the assumption of risk is eliminated and the question of contributory negligence arises. The appellant did not plead contributory negligence, nor did it submit that issue by the instructions offered. The servant does

not assume risks occasioned by his master's negligence. King v. Railroad, 143 Mo. App. 298; Brady v. Railroad, 206 Mo. 509; Settle v. Railroad, 127 Mo. 336; Lee v. Railroad, 112 Mo. App. 372; Williamson v. Transit Co., 202 Mo. 345.

NORTONI, J.—This is a suit for damages accured on account of personal injuries received through defendant's negligence. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff was injured by stepping upon a rusty nail while in defendant's employ in its pole and piling yard. Defendant is engaged in the pole and piling business and maintains a yard of considerable proportions adjacent to the railroad in the lowland known as the Little River Swamp. The pole and piling yard is a cleared and level space, consisting of about three acres, into which poles and piling are floated during the high water season. It appears the poles and piling are felled in the forest and floated through the low country during the high water season in the spring, to defendant's yard. Afterwards, when the water subsides, the yard is cleaned off and the poles and piling dressed for use and loaded on the cars for shipment. The piling timbers are fastened together for the purpose of floating them to the yard, by means of toggles, which, it is said, are pieces of timber nailed to the poles or piling. These toggles with nails therein are knocked loose from the poles and piling in the yard and necessarily accumulate thereabout, and it appears defendant causes them to be picked up and burned, as, otherwise, they would be lodged in the surface of the yard when wet and muddy, and expose the employees to more or less danger through stepping on the nails therein contained. Defendant maintains a steam engine and a large drum on the yard, by means of which, together with a wire cable operated over the drum, it "snakes" the poles and piling timbers about the yard and to the

place where it is desired to dress or load them.  The wire cable winds around the drum and when a piling is once "snaked" to position, in order to attach the cable to another, it is necessary for the men to draw it backwards into the yard.

At the time the plaintiff was injured, he, in company with a fellow workman, was drawing the cable from the drum backwards into the yard, with a view of making it fast to a pole or piling to be "snaked" forward.  About forty yards of the cable had unwound at the time, and plaintiff and his companion were walking backwards pulling on it with more or less force. While thus engaged, plaintiff stepped upon a rusty wire nail protruding from a two-by-six oak plank and received the injury complained of.  It is said the nail was a very large one, thirty or forty penny in size, and protruded upwards, probably two inches above the surface of the earth.  At any rate, it passed clear through plaintiff's foot and pressed the skin on the top.  The wound became infected and plaintiff suffered severely therefrom.

It seems the nail was in the end of a piece of oak plank, two inches in thickness, six inches in width, and some five or six feet in length.  The plank was embedded in the earth—that is, the surface of the yard—all save a few inches at the end from whence the nail protruded, and it appears a portion of this end was embedded as well.  However, the evidence is, that the plank could have been discovered by the exercise of ordinary care in looking over the yard for pieces.  It does not appear from whence the plank came nor how it happened to be embedded there, though it is to be inferred that it floated in during the spring freshet and was permitted to remain through defendant's fault in omitting to clean off the yard before setting the men to work.  The evidence is, that the yard in connection with the adjacent country was flooded, as is usual, by the "June rises," but the water had receded several

weeks before, and defendant had conducted operations for some time on its pole and piling yard as usual.

The date of plaintiff's injury was September 17, and there is an abundance of evidence tending to prove that defendant had omitted to inspect and clean off the yard by causing pieces deposited there to be picked up and carried away before commencing the work. The evidence tends to prove that toggles, containing nails, and other pieces of timber, were deposited in the yard and likely to become embedded in the surface through its mushy and muddy condition after the overflow, unless cleaned off by those in charge. On other occasions it is said defendant had inspected and cleaned the yard and removed such pieces, but this year failed to do so— at least, with the usual care.

The suit proceeds on an averment of a breach of duty on defendant's part in omitting to exercise ordinary care toward furnishing plaintiff a reasonably safe place to work. It is argued the court should have directed a verdict for defendant because the precepts of ordinary care did not require it to search out pieces of timber, which, perchance, were lodged here and there in the surface of the yard; but we are not so persuaded. It appears, as before said, that toggles with nails were commonly disconnected from the poles and piling which floated in, and permitted to fall in the yard. It was parcel of plaintiff's duty to draw the cable over the yard from the drum and while thus engaged to walk backward, as he was doing when injured. With toggles containing nails scattered here and there about, a workman was likely to be injured while pursuing his usual duties. Then, too, the evidence affords an ample inference that pieces of timber floated upon the yard during the overflow and became embedded in its surface because of the muddy condition. Unless such timbers, sometimes containing nails, as this one did, were removed, the workmen were likely to be injured

as plaintiff was. The precepts of ordinary care require that one should anticipate such injuries to those in his employ as are, within the range of reasonable probabilities, likely to befall them. The standard which the law sets up to be reckoned with in such circumstances is a man of ordinary prudence. It would seem that defendant should have anticipated, when considering the manner and method of plaintiff's work, that he would likely step upon a nail embedded in a toggle or a plank, as this one was, deposited in the surface of the yard as a result of its soft and muddy condition immediately after the water subsided. The fact that the particular plank was a stranger there and that it does not appear it had been used as a toggle is immaterial, for the frequency of the toggles containing nails which were permitted to fall upon the yard by defendant cast the duty upon it to exercise ordinary care in searching out such dangers as might arise from protruding nails over the surface of the yard. The evidence is, that the particular plank involved here, containing the nail on which plaintiff stepped, was not fully concealed, but that only a portion of it was buried beneath the surface, with some six or eight inches at the end protruding, and it was in such protruding portion that the nail stood erect and threatened injury. Obviously, defendant might have discovered this peril to the workmen through exercising ordinary care in looking over and clearing the yard for the season's work. No one can doubt that it was defendant's duty to exercise ordinary care toward rendering the place in which plaintiff was required to perform his work as reasonably safe as the circumstances of the situation and the character of the work to be performed would permit. [Doyle v. Missouri, K. & T. R. Co., 140 Mo. 1, 41 S. W. 255; Bradley v. Chicago, M. & St. P. R. Co., 138 Mo. 293, 39 S. W. 763; Baxter v. Campbell Lumber Co., 186 Mo. App. 352, 171 S. W. 955.] The question touching this matter is one for the jury.

But it is argued plaintiff assumed the risk of such injuries, for the reason that he entered defendant's employ with knowledge of the fact that toggles containing nails were permitted to fall and lie in the yard. The evidence, however, is that defendant theretofore had caused such toggles to be picked up and removed and the yard was cleared of such debris as threatened injury to the employees. Obviously, plaintiff had a right to rely upon defendant's usual course with respect of such matters and proceed as though the usual inspection had been made for his safety. It appearing, as it does, that defendant omitted to exercise ordinary care concerning that matter, plaintiff may not be said to have assumed the risk, for in this jurisdiction the rule of decision is, that the servant assumes the risk only of that which is liable to happen on account of the nature of the business, when the master has used reasonable care to avoid such result. In other words, the servant assumes such risks only as are incident to the employment and never those that arise in consequence of the master's negligence thereabout. [See Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; George v. St. Louis & S. F. R. Co., 225 Mo. 364, 406, 125 S. W. 196.]

But though such be true, the instructions by which the case was submitted to the jury are faulty because of their general character. The petition contains a general allegation of negligence, to the effect that defendant breached its duty in failing to exercise ordinary care to furnish plaintiff a reasonably safe place to work, and then specifies the particular dereliction in that it permitted "toggles and other timbers" . . . "with nails in the same to become embedded in the said wet, low, and marshy ground . . ." so as to render the yard dangerous, and that its unsafe condition was known to defendant, or by the use of ordinary care could have been known to it.

The court gave, at the instance of plaintiff, two instructions, which included all of the instructions giv-

en submitting the question of liability to the jury, for all of those requested by defendant were refused. The instructions so given for plaintiff were as follows:

### No. 1.

"The court instructs the jury that it was the duty of the defendant to furnish plaintiff a reasonably safe place in which to work, and that it was the duty of defendant to exercise ordinary care in seeing that its poling and piling yard on which plaintiff was working was kept in a reasonably safe condition."

### No. 2.

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was, on the 17th day of September, 1910, in the employ of the defendant company, and that while in said employment, and while acting in the scope of his duties, and while exercising due care on his part, he was injured, and if you further find that said injury, if any, was due to the negligence and carelessness of the defendant company, in not furnishing plaintiff with reasonably safe place to work, then and in that event, your verdict will be for the plaintiff."

Obviously, these instructions are insufficient, because of their general character, for it is necessary that the jury should find the specific act of negligence developed in the proof—that is, that which rendered the place unsafe. The mere fact that the place was not reasonably safe in which to work because of the embedded plank with the nail in the surface of the yard will not suffice to authorize a recovery, unless defendant knew of its presence and permitted it to remain as a menace notwithstanding, or failed to exercise ordinary care in inspecting the yard toward ascertaining its presence, to the end of removing such dangers. If the jury should find that defendant did not know of its presence and that an ordinarily careful inspection of the yard, such as the master is required to make, would

not reveal the danger of the nail in the plank—that is, that defendant neither knew and by exercising ordinary care thereabout was unable to discover the presence of the danger—then the finding should be for it. On the other hand, if defendant either knew of the presence of the danger and permitted it, or by exercising ordinary care to that end in inspecting and cleaning the yard could have ascertained the danger, the finding should be for plaintiff. Such is the specific averment of negligence relied upon in the petition, and the rule of decision well established is that the instructions must require the jury to find the specific act of negligence relied upon in the petition or developed in the proof and sought to be utilized as a predicate of recovery. [See Feldewerth v. Wabash R. Co., 181 Mo. App. 630, 164 S. W. 711; Allen v. St. Louis Transit Co., 183 Mo. 411, 81 S. W. 1142; Sommers v. St. Louis Transit Co., 108 Mo. App. 319, 83 S. W. 268; Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045; Lauff v. Kennard Carpet Co., 186 Mo. App. 123, 171 S. W. 952.] Moreover, instruction number 1, above set out, is faulty in that it recites it was the "duty of defendant to furnish plaintiff a reasonably safe place to work" as though such duty is absolute, and this is not true, for the master is required only to exercise ordinary care to furnish a reasonably safe place to work. However, if the instructions, when considered together, are otherwise sufficiently definite on this score, the inaccuracy referred to might be passed as insufficient to constitute reversible error. [See Bradley v. Chicago, M. & St. P. R. Co., 138 Mo. 293, 39 S. W. 763.] But, as the case is to be retried, the instructions should be redrafted entirely.

Because of the general character of the instructions above set forth, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.