JAMES W. NEELY, RESPONDENT, v. N. T. FREEZE, APPELLANT.—225 SW (2) 144.

Springfield Court of Appeals. Opinion Delivered November 25, 1949.

*Bradshaw & Fields, Arkley W. Frieze* and *John F. Low* for appellant.

1004

i. *Dalton Deshazer* for respondent.

McDOWELL, J.—This is an action for damages to plaintiff's automobile. The action was begun in the Circuit Court of Jasper County, Missouri, June 28th, 1948, against N. T. Freeze and Jim Beason. The cause was tried before a jury, January 25th, 1949, and a verdict rendered in favor of plaintiff and against the defendant, N. T. Freeze, in the sum of $567.33, and a verdict against defendant, Jim Beason, in the sum of $10.00. From judgment on this verdict, defendant, N. T. Freeze, appeals to this court.

Plaintiff's amended petition states that, on or about the 20th day of February, 1948, he was the owner of a 1941 Pontiac convertible automobile, and that Jack Boswell was driving the same south on Grand Avenue, approaching alternate U. S. Highway No. 71, and that, at said time and place, N. T. Freeze was driving an automobile north on said U. S. Highway No. 71, and that the defendant, Jim Beason, was driving an automobile north on Grand Avenue approaching plaintiff; that the defendants carelessly and negligently operated their automobiles so as to cause same to collide with plaintiff's automobile, seriously damaging plaintiff's automobile.

The petition charges that N. T. Freeze was careless and negligent in the operation of his automobile in that he was,

1. Driving his automobile at a high and dangerous rate of speed considering the slippery condition of the highway and the traffic at said time and place.

2. That he was driving said automobile at such high rate of speed that he was unable to keep the same under control and, upon said highway where he was travelling.

3. That he failed to keep his automobile under control but permitted the same to leave said highway and enter upon Grand Avenue and strike plaintiff's car.

4. That he failed to keep a reasonable safe lookout ahead for other vehicles travelling upon the highway.

Plaintiff states that as a direct and proximate result of the negligence of the defendants as pleaded in the petition, his automobile was damaged in the sum of $850.00.

N. T. Freeze, in his amended answer and counterclaim, pleads as follows: In his answer, he admits that he was travelling on U. S. Highway No. 71 passing through Carthage, Missouri; that said highway is a paved highway sufficiently wide for two lanes of travel; that said Grand Avenue is a public street in the City of Carthage, extending north and south, entering said Highway No. 71 in the south part of Carthage.

The answer denies all other allegations in plaintiff's petition. The answer then states that the accident was caused by the negligence of plaintiff or the person driving plaintiff's automobile,

1. Because the automobile was being operated at a high, reckless and dangerous rate of speed.

2. By negligently and carelessly failing to keep and maintain a careful and proper outlook for other automobiles using said street and highway.

3. By driving his automobile through the intersection of. Grand Avenue and Highway 71, causing the collision.

4. By failing to keep the automobile as close to the right hand side of the highway at time and place of collision.

5. That plaintiff's automobile had its lights burning brightly and failed and neglected and refused to dim his lights as defendant N. T. Freeze's automobile approached it at the point of collision. Said N. T. Freeze having dimmed his headlights, and, as a direct result of such failure on the part of plaintiff, to dim his headlights, and because of the glaring rays from the headlights of plaintiff's car, the vision of defendant, N. T. Freeze, was impaired.

6. That plaintiff failed to remove his automobile from the highway after the accident or to warn other cars of the approaching danger.

7. Defendant states that because of one or more of. the acts of negligence charged in his answer against plaintiff, that plaintiff is guilty of contributory negligence and not entitled to recover.

Defendant's counterclaim states that he was the owner, on the 20th day of February, 1948, of a 1947 Chevrolet Sedan; that, while coming north on U. S. Highway 71, at a point where said highway intersects Grand Avenue, in the City of Carthage, plaintiff's automobile negligently collided with his automobile damaging it in the amount of $750.00.

Defendant, in his counterclaim, relies on the same acts.of negligence on the part of plaintiff as set out in his amended answer and prays for judgment of $750.00.

To defendant, N. T. Freeze's answer and counterclaim, plaintiff files reply.

We deem it unnecessary to set out the joint answer of defendants N. T. Freeze and Jim Beason as Beason does not appeal from the judgment.

Defendant assigns five grounds of error in his brief and argument upon which he relies for reversal in this case;

First, he states that the court erred in not sustaining his motion. for directed verdict at the close of plaintiff's case and at the close of all of the evidence, because,

1. There was no testimony in the record that appellant was guilty of negligence in any respect.

2. That the testimony fails to show whether the damage resulted from the wreck with defendant's car or with Beason's car and does not show what damage was done by appellant's car.

The second assignment of error, is that the court permitted respondent, over his objection, to use the Circuit Court files as evidence and to read therefrom, and then refuse to allow defendant: to read

1008

to the jury from the same files certain portions thereof tending to impeach respondent's testimony.

Defendant's third assignment of error complains that the court erred in giving respondent's instruction numbered 1.

The fourth assignment of error complains of the court erring in giving respondent's instruction numbered 6 over his objection.

The fifth assignment of error is that the trial court erred in giving, over the objections of the appellant, respondent's instruction numbered 7.

In this opinion, for convenience, we will refer to appellant as defendant and to the respondent as plaintiff.

We, here, state such facts as are necessary for the determination of the issues in this case.

Plaintiff's evidence shows that he was working for Wilson Brothers Garage, located on East Fairview Street in Carthage, Missouri, on the night of February 20th, 1948; that he sent Jack Boswell, in plaintiff's automobile, to Hamilton's Restaurant, located on U. S. Highway 71, to get some sandwiches. A young man, by the name of Raymond Matney, went with Boswell, riding in the back seat of plaintiff's car.

The evidence shows that Fairview Street runs east and west, intersecting Grand Avenue, a street running north and south in the City of Carthage. Boswell drove on Fairview Street to Grand Avenue and turned south on Grand to U. S. Highway 71. The evidence shows that there was a stop sign where Grand Avenue intersects Highway 71; that the restaurant to which Boswell was going was about a quarter of a mile south of the intersection of Grand Avenue and U. S. Highway 71, on Highway 71.

Boswell was asked these questions and gave the following answers:

"Q. Well, now, when you arrived at Highway 71 what did you do? A. I stopped.

"Q. Were you driving on the right or left side of the highway before you stopped? A. On the right.

"Q. And did you stop your car on the right or left hand side of the highway? A. The right hand side.

"Q. Would that be the east or west side of the highway? A. . . . . west.

"Q. It would be the west side of the highway. Alright. Now, when you stopped how far would you estimate that the front of your car was from Highway 71? A. Seventeen steps.

"Q. What happened after you stopped? A. He run into me. . . .

"Q. And then just describe to the jury in your own words how this accident occurred. A. Well, I just pulled up there at the Y and stopped, and looked both ways for the cars, and cars were coming from the south, and there was some cars going south, coming from the west going south; and I pulled up there and stopped, and when

I pulled up there and stopped I was waiting on the cars to go by, and while I was setting there waiting, why, he came along and slid into me.

"Q. At any time before the accident state whether or not your car was out upon Highway 71? A. No.

"Q. Where was your car, describe its location to the best of your ability, when it was struck by the other automobile. A. It was setting about 17 steps off the highway on Grand.

"Q. On which side of the road, the east or west side? A. The west.

"Q. What happened when the two cars collided? Well, what was the position of the cars after they collided? A. Well, I was heading south, and when he hit me mine turned and it was heading sort of southwest, and it was setting right on the southeast side of it.

"Q. Was any part of your car extending across the center line of Grand Avenue over onto the east side of Grand Avenue? A. Yes.

"Q. How much of it? A. Well, about three foot."

The witness testified that no part of the Freeze car, after the accident, was on the east side of Grand Avenue; that it was headed southwest. The witness testified that after the accident he got out of his car and went around in front, there he saw Mr. Freeze and his party. He stated he did not talk to Mr. Freeze but just waited for the police to come; that a trooper had called the police. He stated the trooper got there about three minutes after the accident; that the trooper stepped the distance from his car to the highway and that it was seventeen steps. He testified that Jim Neely, plaintiff, came to the accident about fifteen or twenty minutes after it happened; that the cars were not moved before plaintiff got there. He testified that police and patrolmen investigated the wreck and arrested no one. He testified that the patrolman put out flares on the south of Highway 71 and west on the curve; that the flares were placed out about ten minutes after the accident. The witness testified that the defendant, Jim Beason, came from the south on Highway 71, going north turned on Grand Avenue and hit the back of plaintiff's car.

"Q. Do you know what damage was done by that impact? A. Well, just loosened the bumper and tore a hole in the fender.

"Q. What damage was done by the collision with the other car to Jim's car? A. Well, it bent the front end."

The witness testified that Freeze's car damaged the front end of Neely's car and the front end of the Freeze car; that the impact scooted plaintiff's car back four or five feet. He testified that the Freeze car came sideways into his car and hit the center of plaintiff's car with his front fender, pushing the plaintiff's car backwards and defendant's car to the side of plaintiff's car. He testified that the right front fender of defendant Freeze's car struck plaintiff's car. He testified that the Beason car, after the collision, went down the road about thirty feet and stopped. The witness testified that, when he

1010

stopped plaintiff's car at the intersection of Grand and Highway 71, he dimmed his lights before he saw defendant Freeze's car coming.

"Q. Now, tell this jury the condition of the highway as you are going down Grand Avenue and approaching Highway 71 for a distance "of say 100 yards or so with reference to smoothness of the concrete highway, is it rough or smooth? A. Smooth.

"Q. Are there any bumps in the highway? A. No.

"Q. It is paved with what? A. Cement.

"Q. Is it, state whether or not it is wide enough for two lanes of travel? A. Yes.

"Q. How wide is Highway 71 at the point where Grand Avenue joins into it? A. It is wide enough for two way traffic.

"Q. Now, tell the jury this; as you are approaching from the south, going north, approaching Grand Avenue, what would happen if you continued on due north at the intersection there, where would you go? A. To Carthage."

The witness testified that if one travelled due north on 71 he would leave 71 and go on Grand Avenue; if the traveller wanted to go on Highway 71, he would have to turn west at the place where Grand Avenue intersects alternate Highway 71. He would have to make a rounding curve, a gradual turn.

"Q. What was the condition of the weather that night, Jack? A. Sleeting.

"Q. Was the highway slick? A. Yes.

"Q. Was it covered with sleet or covered with ice, what was the condition of it? A. Sleet.

"Q. Now about what time did that happen? A. About one o'clock."

Now the witness testified that plaintiff's car, which he was driving that night, was a convertible five-passenger coupe, '41 Pontiac. The witness was not certain whether or not plaintiff arrived at the accident before or after defendant, Jim Beason's car struck plaintiff's car. He testified that the young man, who was in the back seat, was, at the time of the trial, in Fayetteville hospital.

Boswell testified that, after the accident, one of his lights was burning, the other was broken out. He testified that he did not move the car until the wrecker came. He testified that the defendant did not try to get him to dim his lights and that he was not on the wrong side of the street at the time of the collision.

"Q. Jack, do you know whether or not this accident happened "in the city limits of Carthage? A. Yes."

The witness testified that it was about fifteen minutes from the time Freeze's car struck plaintiff's car until Beason's car struck plaintiff's car.

James W. Neely, plaintiff, testified that on the 20th of February, 1948, he owned a 1941 Pontiac Convertible, which car was in the

accident; that he was a mechanic at the garage and was employed by Wilson Brothers, who were in the trucking business. He testified that this was a private garage. He testified that he sent Jack Boswell, in his car, after sandwiches. He testified that the patrolman came after him and that that was the first he knew of the accident; that he got in the patrolman's car and proceeded to the scene of the accident, there he found Jack Boswell and several other people, including the defendant, Freeze. The night was very cold. The Beason automobile was not there when plaintiff arrived and that he did not see the collision between his car and the Beason car; that collision occurred before plaintiff arrived.

Plaintiff testified that, coming north on Highway 71, approaching the curve from the south, there is a highway sign which reads "City Limits" and "Police Patrolled", and just before you reach the curve, there is a curve signal on Highway 71; that the highway sign also says, "Slow" as you are approaching from the south. He testified that, going south on Grand Avenue to Highway 71, as you approach Highway 71, the first sign says, "Slow"; that that sign is some distance from the highway and going further toward the highway is a sign that says "Stop" and just a few feet further on is a sign marked "71, Alternate 71." The witness testified that there was a dirt road coming in from east into Grand Avenue, just across from the stop sign where Grand intersects Highway 71. The witness testified that the sign saying, "Alternate Highway 71" was about 40 feet from the inside line of the Y made by the junction of the two roads and that the stop sign was about 20 feet north from that sign. He testified that when he arrived at the accident, his car extended about three feet on the east side of Grand Avenue and that the Freeze car was headed almost directly west. The back end of the Freeze car did not extend over into the east half of Grand Avenue. It was all on the west half of Grand Avenue. He testified that the Freeze car was a good ten foot clearance off of Highway 71. Neither plaintiff's car nor the Freeze car were on Highway 71.

"Q. Now, what damage, just describe to the jury the damage that was inflicted upon your car by the Freeze car? A. . . . . When I got there the Freeze car was setting in front of my car. I took a quick look to see what kind of damage had been done to make sure that we couldn't drive either one of them off the payment. That was my first thought, to get them out of the way. And so I checked my car, and the front fender, grille, the right front fender, the right light and grille, had all been mashed into the wheel. The wheel had been mashed completely down and the front of the frame had been bent, and I would say that that would be about the best way I could explain the damage to my car."

Plaintiff was asked to describe the damage to the rear of his car and he testified that the left rear fender had a hole torn in

1012

it and the back fender had been torn loose on one side, half of it lying on the concrete at the scene of the accident.

Plaintiff testified that, in a conversation with the defendant, Freeze, that Freeze stated, in answer to plaintiff's question to him as to how the accident happened . . . . "Well, there wasn't much for him to say except that the fact that the lights blinded him, and he just didn't know what happened after that, and just ended up that way."

"Q. Now Jim, will you give this jury your best estimate as to the value of your automobile before it was involved in this collision? A. Before it was involved I would say it was, to me it was worth $1400."

The witness testified the car, before the collision, was in perfect condition, had a brand new motor in it, new transmission, and had had all rusty spots touched up on it. He testified that his estimate of the value of the car, after the collision, was $600.00. He testified that Blackwood-Barr Motor Company repaired his car; that the repair bill was $577.33. He testified he did the work on the body and fenders, that he worked for the Blackwood-Barr Motor Company.

Plaintiff denied that he made a statement to the defendant and others that he didn't know Boswell was driving his car that night.

Plaintiff testified that defendant's car was a '46 or '47 Chevrolet, five passenger coupe, approximately new.

"Q. I want to get one other thing straightened out: You told Mr. Boswell to take your car? A. That is right." And plaintiff testified that Boswell was driving his car at the time of the wreck with his permission. Plaintiff testified that defendant Freeze's car was ten feet from Highway 71 at the time of the accident and that his car was a much greater distance from Highway 71.

Plaintiff's witness, C. E. Barr, testified that plaintiff's car, before the accident, was worth $1400.00 or $1450.00 and, after the accident, from $600.00 to $650.00; that he estimated the cost of the repair bill to plaintiff's car to be $577.33. He testified that they were paid that amount for the repairs.

Robert W. Russell testified, on behalf of plaintiff, that he was riding with Jim Beason, coming north on Highway 71, when Beason's car struck plaintiff's car, just off Highway 71 on Grand Avenue. He testified that Beason's car was travelling north on alternate Highway 71 and that when they got to the intersection with Grand Avenue, they turned to go straight down Grand because Beason lived in the east part of town. He testified that Highway 71, at the place of intersection with Grand Avenue, makes a sweeping turn, and that you go right straight to go on Grand Avenue, which is a continuation of Highway 71.

"Q. Go ahead. A. And we saw the cars setting there, we couldn't tell much about them, but they were setting there, and

couldn't tell whether they were wrecked or what for sure, and we just struck the back end of this car and swung it around, and then went up and stopped, and then came back and viewed the damage that had been done to the two cars.

"Q.  Now, Mr. Russell, can you give this jury any estimate of how far north of Highway 71 these two cars were?  A.  They were clear of the intersection, because there were people standing out in front of this other car, between the other car and the intersection there, and the highway where it made the turn.

"Q.  What part of Beason's car struck what part of Jim Neely's car?  A.  Well, we struck the car, Neely's car, with our left front fender.  The wheel busting a tire against his fender."

Witness testified that the Neely car was three foot over on the east side or their right hand side of the road.  He testified there was a small shoulder along the side of Grand on the east side but that it was covered with snow and ice and you couldn't tell exactly where you did start in on it.  This witness testified that, while he was there at the wreck, traffic was moving along Highway 71 and that there were no flares out.  He testified there were three policemen there at the time.

Plaintiff offered the Circuit Clerk, Harold Jones, who testified that the petition was filed June 28th, 1948, in this case, and that defendant Freeze's amended answer and counterclaim was filed on the day the trial started.  This was plaintiff's evidence.

At the close of plaintiff's case, defendant, N. T. Freeze, filed a separate motion for directed verdict,

1.  Because the plaintiff's evidence shows that the driver of plaintiff's said automobile was guilty of contributory negligence as a matter of law.

2.  That said plaintiff has failed to establish a prima facie case authorizing said cause to be submitted to the jury.  This motion, the court overruled.

Defendant Freeze's testimony shows that as he was coming north on alternate Highway 71, approaching the intersection of Grand Avenue and said highway, around one o'clock in the morning, they observed plaintiff's automobile approaching them on Grand Avenue, coming south toward the highway.  This question was asked defendant's witness:

"Q.  There was no obstruction between you?  A.  No obstruction.

"Q.  And at about - now, where did, what happened then?  Just tell the jury in your own words.  A.  Well, the right fender of Freeze's car struck the left fender, the front of this other car, the Pontiac car.

"Q.  Go ahead.  A.  And it swung, the impact swung the Freeze car around, a little to the west it would be.

"Q. Well, where the collision occurred? A. It was on this street just, oh, it wasn't very far, 6 or 10 feet.

"Q. Just off the highway? A. Just off the highway and just about the center of the street."

This evidence was offered by defendant:

"Q. Did you see any warning signs indicating that a curve was in the highway? A. Yes.

"Q. Did you see a "Slow" sign before you saw that warning sign farther south on the highway? A. Well, near that pretty close.

"Q. But you did see the sign, the highway sign, indicating that the highway was going to turn to the left? A. Yes."

The witness testified that defendant Freeze had no intention of turning on Grand Avenue but was going to turn to the left and that the pavement was covered with snow.

The defendant testified that he put on his brakes and slid off over into Grand Avenue, to the right and struck Neely's car.

Defendant's witness, Heath, testified that he was riding in the front seat of an automobile, immediately behind defendant's car, at the time of the accident; that he had been travelling from Neosho, Missouri, and that they were running about 200 yards behind defendant's car and that their speed was a reasonable speed. He testified there was nothing to mar their vision and that he could see some 200 yards ahead.

The defendant's witness, Burris, testified that Freeze's car was travelling between 30 and 40 miles an hour on Highway 71, coming from Neosho to Carthage, that he was riding with defendant in the front seat. This witness testified that he saw plaintiff's car approaching on Grand Avenue as their car approached the intersection; that the defendant dimmed his lights a time or two. He testified that plaintiff's car lights were pretty bright. This witness testified that Freeze tried to stop, he tried to put on his brakes and that Freeze said to him, "I'm afraid we are caught."

Defendant's witness, Grainger, gave the following answer: "A. Well, as I saw it and remember it, Mr. Freeze was coming down 71 on the right hand side, and these lights were bright, apparently they were so bright he couldn't tell where he was driving, because he kept hugging over to the right hand side before he came into the turn, as he went into the turn right where Grand is, he got over the edge of 71, off the pavement, like what I mean, when a man is on the main 71 there and starts to make this turn, it looked to me like the light was so bright that he couldn't tell where he was at, and apparently, oh, his car was probably over, I would say 5 or 6 feet from the edge, I mean the right hand wheels from the edge of 71 Highway starting to make this bend, and the car coming from the north was in the center of the road driving. You couldn't see a line that night, of course, there was snow on it, but he was driving

in the center of the road, and the left fender caught Mr. Freeze's right front fender.''

The witness testified that when Freeze's car got to the corner or curve, he tried to make the turn but it looked to him like he just couldn't see anything. He said the Freeze car was not sliding to any big amount; that it was headed northwest at the time it struck plaintiff's car.

Defendant's witness testified:

''A. You are referring to at the corner now?

''Q. Yes. A. At the intersection.

''Q. Immediately prior to the collision? A. Just as he was approaching this intersection I saw bright lights. I couldn't - - I noticed then that he pulled over to the right hand side just as close as he could to the edge of the pavement.

''Q. Then did he ever start to move to the east then a little bit? A. That would be the right hand side.

''Q. Now, did it proceed on due north then? A. Did they proceed on due north?

''Q. Yes. After it moved over to the edge of the pavement, then what happened? A. You mean right, at the intersection? Right on the turn?

''Q. Well, where was it he moved over to the right edge of the pavement? A. That would be hard to say, sir, just exactly how many yards or feet back, but right close to the intersection there.

''Q. And then where did he go and what happened then? A. When he got right onto the intersection apparently he had his car up over the edge on the right hand side of the pavement where it starts to make the bend to the left.

''Q. You mean he had one wheel out on the shoulder? A. Just as he got to the edge there.

''Q. He had one wheel off? A. Where the east edge of Grand Avenue comes onto 71, and right above just where those two would come together, where 71 comes around here (indicating) and here is Grand comes up here, I don't think at any time coming down 71 he ever got up over the shoulder. If he did I didn't notice it. But just as he got right in here on Grand, the way I saw it, his car got off of the main track a little bit on coming around 71 right up on the edge of what you would call the shoulder of 71.

''Q. In order that the jury may understand this, the east edge of Highway 71 and the east edge of Grand Avenue are one straight line? A. Right I think so.

''Q. He was over to the extreme right hand edge of the pavement? A. Yes.

''Q. Just a minute. What did you see? Let's don't have your opinion. A. That is what I was attempting to tell. That is what

I mean by that. His right hand wheels got over the edge of the 71 onto the edge of Grand Avenue a little bit.

"Q. As he was rounding the turn? A. As he was rounding the turn. Apparently he must have applied his brakes, and I believe that the back end of his car turned around to the right."

This witness testified that defendant's car started to turn west on Highway 71 and that he would say that the right hand front fender of the Freeze car was possibly three or four or five feet further west than the center line of Grand Avenue. The witness stated that the Freeze car was headed northwest when he applied his brakes and started to skid. This witness testified that plaintiff's car was damaged on the left front corner; that the left front fender and headlight was knocked off. The witness testified that Highway 71, where it makes the turn to the west, at the intersection of Grand Avenue, slopes to the left and inside and that where it intersects Grand Avenue, the road is higher or a ridge and that he supposed, from what he saw, that Freeze pulled his car six inches over the ridge toward Grand Avenue and when he applied his brakes, his car slid around to the right into Grand Avenue. This witness also testified that as defendant Freeze was going around the curve, where Grand and 71 join, he was six inches over the line on Grand Avenue.

The defendant Freeze testified that as he approached a point where Grand Avenue in the City of Carthage intersects Highway 71 that he was driving 20 or 25 miles an hour. He testified that he saw plaintiff's car coming down Grand Avenue as he approached the intersection, going north. He testified that he was going to Lamar and that 71 was the route he was going to take. He testified that as he approached the intersection he crowded the outside shoulder just as close as he could. He testified that he first thought about going on down Grand Avenue to keep from hitting plaintiff in the center of 71 and then he said he put on his brake and that his car started to skid down over the divide on Grand and 71. He testified that the cause of the wreck was the bright lights and that he put on his brakes to keep from hitting the plaintiff headon.

This question was asked defendant Freeze:

"Q. And how fast were you going? A. 25 miles an hour.

The first assignment of error relied upon by the defendant in this case is that the trial court erred in denying appellant's motion for a directed verdict offered at the close of plaintiff's evidence and again at the close of all of the evidence.

Plaintiff relies upon the following specific acts of negligence for recovery:

(a) That defendant was driving his automobile at a high and dangerous rate of speed considering the slippery condition of the highway and the traffic at the said time and place.

(b)   That he was driving his automobile at such a high rate of speed that he was unable to keep same under control and to keep the same upon said highway upon which he was travelling.

(c)   That defendant failed to keep his automobile under control and allowed the same to leave said highway and to enter upon Grand Avenue and strike plaintiff's automobile.

(d)   That he failed to keep a reasonably safe lookout ahead for other vehicles which may be travelling upon said streets or said highway.

The law governing the sufficiency of evidence to make a submissible case to the jury is clearly stated in Lowry v. Mohn, 195 S. W. 2d 652, 654:

"In testing the sufficiency of the evidence to make out a case submissible to a jury upon motion for a directed verdict (as formerly upon a demurrer to the evidence or a request for a peremptory instruction, now abolished by the Civil Code of Missouri), the plaintiff's evidence must be considered true, and the plaintiff given the benefit of every inference of fact which can be reasonably drawn therefrom.   Examine Hardin v. Illinois Cent. R. Co., 334 Mo. 1169, 70 S. W. 2d 1075; and Section 112, Civil Code of Missouri, Laws of Missouri 1943, p. 387, Mo. R. S. A., Section 847.112.''

In Story v. People's Motorbus Co. of St. Louis, 37 S. W. 2d 898, 900, the law is thus stated:

"As defendant refused to stand upon its demurrer to the evidence offered at the close of plaintiff's case, the demurrer at the close of the whole case then searches all the evidence adduced to determine whether plaintiff made a submissible case.   The facts most favorable to plaintiff develop that the bus was proceeding down the east slope of the viaduct, with ice on the street, running at the rate of speed of 20 miles an hour, following a truck going at the rate of 10 miles an hour, until it came within such a short distance of the truck, which stopped to turn, and that the bus itself was unable to stop without swerving, thus permitting the inference that the swerving, while running at the aforesaid speed, caused the bus to skid.   An inference of negligence arises from the facts summarized, which plaintiff is permitted to use to her advantage.''

We hold that, under the authority in this case, defendant's negligence was a question for the jury and that plaintiff made a submissible case.

Emrick v. City of Springfield, 110 S. W. 2d 840, 843; this court stated the following rule of law:

"(1)   In passing on a demurrer it must be borne in mind that all evidence most favorable to the plaintiff must be accepted as true, and that the plaintiff must be given the benefit of all favorable inferences arising from such evidence, and all evidence un-

favorable to plaintiff must be disregarded. This principle of law is so firmly established in our system of jurisprudence that citations are unnecessary in support thereof.''

Plaintiff states, in his petition, "that he suffered injury to his automobile by virtue of the negligence of the defendant and he specifically pleads four separate acts of negligence on the part of the defendant, which he contends were the direct and proximate cause of his injury. It is the duty of the plaintiff to prove one or more of such acts of negligence, on the part of the defendant, so pleaded, by preponderance or greater weight of the testimony.

The facts most favorable to plaintiff are that the plaintiff's agent drove his Pontiac automobile down Grand Avenue, a two lane concrete highway in the City of Carthage on the 20th day of February, 1948; that he stopped said automobile seventeen steps before he reached the intersection of Grand Avenue and alternate U. S. Highway 71, and that his car was on the right side or west side of said street or highway at the time he stopped; that he dimmed the lights on said Pontiac car and was, at the time of the accident, waiting for traffic to pass going north and south on U. S. Highway 71; that while so stopped on Grand Avenue, defendant ran into his automobile, striking his Pontiac car on the front and left side, causing the injury complained of; that the force of the impact between the two cars drove plaintiff's car back four or five feet and that the front end of his car was heading southwest and the back end two or three feet over the center line of Grand Avenue to the east; that the night was dark and Highway 71 and Grand Avenue were covered with sleet and slick; that the time was about one o'clock in the morning. The testimony further shows, on the part of the defendant, that defendant was driving a Chevrolet automobile north on Highway 71, which makes an ''S'' curve or a rounding curve to the northwest where it intersects Grand Avenue; that Grand Avenue runs straight south connecting with Highway 71 and unless a driver travelling Highway 71 makes the curve and goes to the northwest he would go straight into Grand Avenue and straight into the City of Carthage.

Now the evidence shows that as defendant approached the City of Carthage on Highway 71, he had been driving from 40 to 45 miles an hour and that he intended to turn northwest and stay on U. S. Highway 71; that as he approached the intersection of Highway 71 with Grand Avenue, he saw plaintiff's car lights; that as he started to round the curve he was driving 20 or 25 miles per hour. At one place in defendant's testimony, he stated he was driving 25 miles an hour. Defendant's testimony shows that, as he approached the intersection, after he saw plaintiff's car lights, he hugged the right side of the pavement of Highway 71 and that he actually got over the pavement and over on Grand Avenue, one witness said, six

inches. The evidence shows that Highway 71 is a two-way concrete highway; that it slopes to the south where Grand Avenue intersects said Highway 71 and that the street is higher at the intersection; that defendant got his car over on Grand Avenue and over the high part of the intersection; that he put his brakes on and that, when he did, he skidded into plaintiff's car, striking the front part of plaintiff's car with the front part of his car and right fender. Now the testimony shows that on the part of the defendant, he started to turn his car to the northwest on Highway 71 and that the front part of his car got three or four feet past the center line of Grand Avenue before he put on his brakes and skidded. There was sufficient testimony as to the damage of plaintiff's car.

Annin v. Jackson, 100 S. W. 2d 872, 876, the court makes the following statement of law:

"(3) With reference to the skidding, it is well settled doctrine that the mere skidding of a motorcar is, in and of itself, not negligence; that it is as consistent with the care as with negligence of the driver, and it may and as a matter of experience does occur without fault. Story v. People's Motorbus Co. 327 Mo. 719, 725, 37 S. W. 2d 898, 900; Heidt v. People's Motorbus Co. 219 Mo. App. 683, 284 S. W. 840; Polokoff v. Sanell (Mo. App.) 52 S. W. 2d 443, 446; Peters v. United Elec. Rys. Co., 53 R. I. 251, 165 A. 773, 774, and cases there cited."

We agree with the law as thus declared. The plaintiff certainly cannot make his case on mere inference alone. Had defendant stood on his motion for directed verdict at the close of plaintiff's case, under the evidence, we would hold that plaintiff made no case. When plaintiff rested, the only material facts he had shown as to how the injury occurred were, that, plaintiff's car was stopped on the west or right hand side of the road on Grand Avenue 17 steps from the intersection of that street with Alternate U. S. Highway 71, with the lights dimmed and that, while so stopped, defendant's car skidded into him. Under the law these facts alone would not establish negligence. Defendant did not stand on his motion for directed verdict at the close of plaintiff's case. He offered evidence in the defense of the action and, at the close of all of the evidence, reoffered his motion for directed verdict. The facts, at the close of all of the evidence, most favorable to the plaintiff, are that the defendant saw plaintiff's car and the lights thereon; that he got off the highway on which he was travelling and got over the slope on Grand Avenue, the street on which plaintiff was stopped and the testimony shows that he caused his car to skid by putting on his brakes on a sleet-covered, slick highway, and that because of his acts in putting on his brakes and because of the speed at which he was travelling of 20 or 25 miles an hour, rounding a slick, icy curve and because he got his car off Highway 71 and

over the incline on Grand Avenue, his car skidded and struck plaintiff's car. Defendant's evidence further discloses that, at the time he applied his brakes, the front of this car was two or three feet past the center line of Grand Avenue where it intersects the Highway 71.

An inference of negligence might arise from the fact that defendant was driving his car 20 or 25 miles an hour around a slick and icy curve; that that rate of speed would be dangerous and an inference of negligence might arise from the fact that he got his car off of Highway 71 and did not keep the same under control and that he applied his brakes, knowing that said road was slick and covered with sleet, upon which he was then travelling and we certainly think that inference of negligence that the defendant failed to keep his automobile under control, allowed the same to leave the highway and enter upon Grand Avenue and strike plaintiff's automobile, if plaintiff's testimony were true that he was parked 17 steps from the intersection and defendant's testimony were true that he got over off the travelled highway U. S. 71, in making the curve and that after he was four or five feet past the center line with the front end of his car, he put on his brake, which caused him to skid. We think that the jury might find that the highest degree of care was not used by defendant at the time and place in operating his automobile and that as alleged in plaintiff's petition, defendant failed to keep his automobile under control and allowed the same to leave the highway and strike plaintiff's car.

Questions of fact are for the jury and where reasonable minds can differ the court should not direct a verdict. This law is clearly defined in Lowry v. Mohn, supra, page 657:

"* * * courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other. 10 R. C. L. 1009; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 24 S. W. 2d 143; Schlemmer v. McGee, Mo. Sup., 185 S. W. 2d 806." This contention is ruled against defendant.

Defendant complains in his second allegation of error that the court erred in not permitting him to offer certain evidence for impeachment purposes. His complaint is as follows: "Thereafter, appellant called the clerk of the trial court as a witness and asked him to look at the same files of the case and tell the jury who respondent had alleged was driving his car at the time the accident happened." Objection was sustained by the court to this offering. The record does not show that the files were actually offered by either the plaintiff or the defendant.

This was clearly an attempt to impeach on immaterial issues. There was no issue in the case as to who was driving the plaintiff's

car. The evidence of both plaintiff and defendant established that fact. This contention is ruled against defendant.

Under defendant's third assignment of error, complaint is made in the giving of instruction numbered 1 for plaintiff because it erroneously directed the jury to award damages without first requiring a finding of negligence. This instruction is as follows:

"Instruction No. 1.

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence Jack Boswell was driving an automobile belonging to James W. *Neely*, the plaintiff, south on Grand Avenue in Carthage, Missouri, and approaching the intersection of Grand Avenue with Alternate U. S. Highway No. 71 and that the defendant, N. T. *Freeze*, was driving an automobile north on Alternate U. S. Highway No. 71 and approaching said intersection, if you so find, and if you further find and believe from the evidence that Jack Boswell was driving on his right hand side of said Grand Avenue and that he stopped said automobile on his right-hand-side of said Grand Avenue before entering upon Alternate U. S. Highway No. 71, if you so find, and if you further find and believe from the evidence that while the automobile driven by Jack Boswell was so stopped the defendant N. T. *Freeze* drove his automobile into Grand Avenue and struck and damaged the automobile driven by Jack Boswell then your verdict will be for the plaintiff and against the defendant N. T. *Freeze* in amount sufficient to reasonably compensate plaintiff for damage directly caused by the collision between plaintiff's automobile and the automobile driven by defendant N. T. *Freeze,* and in assessing plaintiff's damages you will be governed by the instruction given you on the measure of damages."

We believe that this instruction is clearly erroneous and that the trial court committed reversible error in giving the same.

This instruction practically directed a verdict in favor of plaintiff and against the defendant, N. T. Freeze. The court told the jury that if they believed and found from the evidence that Boswell drove plaintiff's car on the right hand side of the road and stopped at the stop sign where Grand Avenue intersects Highway 71, and that while stopped, defendant's automobile struck and damaged plaintiff's car, then defendant was liable.

Plaintiff alleged in his petition, four specific grounds of negligence on the part of the defendant, Freeze, on which he relied for recovery. Under the law he must plead and prove a breach of duty on the part of the defendant and a causal connection between his injury and such breach of duty and where he pleads specific acts of negligence he must prove one or more such grounds in order to recover. In this instruction, the court does not require him to prove any of

1022

the grounds of negligence alleged in the petition. Emrick v. City of Springfield, 110 S. W. 2d 843.

In Annin v. Jackson, supra, the court lays down the law thus:

" 'Instructions which fail to require a finding of the specific negligence charged have been repeatedly condemned.' Stempf v. United Rys. Co. (Mo. App.) 227 S. W. (852) 854, citing Beave v. Transit Co., 212 Mo. 331, 111 S. W. 52; Sommers v. Transit Co., 108 Mo. App. 319, 83 S. W. 268; Feldewerth v. Railroad, 181 Mo. App. 630, 164 S. W. 711; Eastridge v. Lumber Co., 188 Mo. App. 438, 174 S. W. 462; Dalton v. Refining Co., 188 Mo. App. 529, 174 S. W. 468."

This instruction presents no definite issue to the jury and their verdict is responsive to nothing. The instructions should have defined the issues that the jury were to try and, because this instruction did not define the issues tried, it is erroneous.

Defendant complains of plaintiff's instruction numbered 6 under his fourth assignment of error. We find no merit in this contention. Instruction No. 6 instructs the jury that if they find for plaintiff they will assess his damages as such sum as will be equal to the difference between the fair market value of plaintiff's automobile immediately before the collision and the fair market value after the collision and, at arriving at their verdict, they will consider only such damages as are directly caused by the collision between the automobile driven by defendant and plaintiff's automobile. This instruction clearly follows the law. We think there is no need in citing authorities on the measure of damages. The cases cited by the defendant in no way conflict with this holding.

The fifth assignment of error complains of the giving of plaintiff's instruction No. 7. This instruction was relative to damages caused by injuries to Jim Beason's car. Beason, one of the defendants in this case, did not appeal and defendant, here, is in no position to complain of error in that case.

Judgment reversed and remanded. *Vandeventer, P. J.,* and *Blair, J.,* concur in results.