Doris I. GOOCH, Respondent,

v.

AVSCO, INCORPORATED, and Robert L. Fetters, Appellants.

No. 47729.

Supreme Court of Missouri,

Division No. 1.

July 11, 1960.

Stephen R. Pratt, Thomas E. Hudson, Hudson, Cavanaugh & Fox, by Thomas E. Hudson, Kansas City, for respondent.

Robert E. Coleberd, Arthur R. Kincaid, Liberty (Hale, Coleberd, Kincaid & Waters, Liberty, of counsel), for appellants.

HOLLINGSWORTH, Judge.

This is an action for damages for personal injuries sustained by plaintiff in the collision of three northbound in line motor vehicles on the ASB Bridge which crosses the Missouri River and connects Kansas City and North Kansas City. Plaintiff sued Donald Hendricks, the driver of a two-door sedan in which she was riding, Thomas as Schaeffer, the driver of a pickup truck preceding the Hendricks sedan, and Avsco, Incorporated, and its employee, Robert L. Fetters, the driver of Avsco's station wagon following the Hendricks sedan.

The jury returned a verdict for plaintiff against defendants Avsco and Fetters for $12,000, and a verdict for defendants Hendricks and Schaeffer. Following judgment rendered in accordance with the verdicts, defendants Avsco and Fetters filed an after-judgment motion to set aside the judgment rendered against them and a motion for new trial on the issue of liability alone. These motions were overruled. Avsco and Fetters (to whom we henceforth refer simply as "the defendants") appealed. Inasmuch as the amount in dispute, exclusive of costs, exceeds $7,500 and the appeal herein was taken prior to January 1, 1960, jurisdiction lies in this court. Section 477.040 RSMo 1949, V.A.M.S., as amended by Laws 1959, S.B. 7, § 1.

Defendants here assert (1) that no submissible case was made against them; (2) error in the giving of plaintiff's verdict-directing instruction; and (3) error in the admission of two photographs of plaintiff in traction devices while confined in the hospital.

The ASB Bridge crosses the Missouri River in a north-south direction. The surface of the bridge is blacktop and asphalt. It has four traffic lanes, two east lanes for northbound and two west lanes for southbound traffic. There is a superstructure at the south end of the bridge, north thereof is an open space overhead, then a second superstructure. Third Street is the first east-west street south of the bridge approach.

The collisions occurred between 2:00 and 2:30 p. m., on October 23, 1957, at which time a drizzling rain was and for some time had been falling, making the streets and bridge surface wet and slick. Plaintiff, aged 40 years, a resident of Kansas City North, was riding homeward in a sedan driven by her neighbor, Hendricks, from

the DiRenna Clinic in Kansas City, where she had been receiving post-operative care following a prior abdominal operation. They entered the south approach of the bridge at Third Street and drove northward on the inside northbound traffic lane to the point of collision.

Plaintiff testified: The car in which she was riding was traveling 20 to 25 miles an hour. After they had passed the super-structure, she felt the application of Mr. Hendricks' brakes, looked forward and saw the pickup truck, driven by Schaeffer, 25 to 30 feet ahead. It was in the inside north-bound lane immediately in front of them and was "sliding" at a slight angle toward the left; probably the left front wheel and left front fender extended west of the inner northbound lane in which both cars were proceeding. The Hendricks car collided with the rear of the pickup truck. The Hendricks car was then struck in the rear by the Avsco (Fetters-driven) station wagon. The latter collision followed close-ly upon the first one. The impacts threw her forward, "flipped" her back and forth in the seat. She became nauseated, nerv-ous and scared, but did not, at that time, think she was seriously injured. She did not see or hear any warnings or signals, mechanical or manual, during the course of the aforesaid collisions. Another neigh-bor and friend of her family came along and returned her to the hospital.

When plaintiff was returned to the clinic, it was found that she had sustained certain superficial injuries and also injuries to her back. She returned to her home, thereafter returning periodically to the clinic for treat-ment of her back. Later she was placed in pelvic traction for a period of ten days. In November, 1958, it was suspected that she had suffered an injury to her spine as a result of trauma sustained in the colli-sions. An operation was performed, during which a degenerated disc was discovered and removed from the lower lumbar region of her spine, which condition, the medical testimony showed, was the result of trauma sustained in the collisions.

Troy F. Campbell, a member of the Kan-sas City Police Department, testified in be-half of plaintiff: He arrived at the scene of the collision at about 2:45 p. m. It occurred on the ASB Bridge approximately two and one half blocks north of Third Street. Schaeffer, the driver of the pickup truck, told the witness that he had stopped his truck when he was struck from the rear by the Hendricks sedan. Hendricks said that he was 40 to 50 feet behind the pickup truck when he first observed it had stopped in the line of traffic and that he was traveling at a speed of 28 miles an hour when he was forced to apply his brakes to avoid collid-ing with the rear of the truck, but could not avoid skidding into it. Fetters told the witness that he was 40 to 50 feet behind the Hendricks car when he first became aware of the danger of striking it, at which time he (Fetters) was traveling 30 miles an hour, and had slowed to 15 miles an hour when he came into collision with Hen-dricks' car.

Plaintiff, without objection on the part of counsel for appellant-defendants, offered and the court admitted in evidence portions of depositions given by the ther defendants, Schaeffer and Hendricks. Following the reading of the portions of the depositions thus admitted, plaintiff's counsel stated that he wished to read to the jury the whole of Fetters' deposition, to which counsel for the appellant-defendants announced, "I'm not going to object to it. That's the only evidence I have. Mr. Fetters isn't here and I can't find him either."

The portions of the deposition of Schaeffer, driver of the pickup truck, read to the jury, insofar as material, stated: As he drove northward across the bridge at a speed of 25 to 30 miles per hour, there was a line of 8 to 12 cars ahead of him. He saw the brake lights of the car immediately ahead of him go on. It was then a dis-tance of 75 to 80 feet from him. He applied his brakes and slid to a stop about 10 feet from the vehicle in front of him, which was also stopped. The car to his rear (Hen-dricks') then forcefully struck the rear of

his car and pushed it until it touched the car ahead of him.

Hendricks' deposition, insofar as material, stated: He was going northward on the bridge at a speed of 20 miles an hour when he saw the pickup truck as it began to slide to a stop, 40 to 50 feet ahead of him. He immediately applied his brakes and had reduced his speed to five miles an hour when he came into contact with the pickup, and was immediately thereafter struck in the rear by the Fetters station wagon.

The Fetters deposition, insofar as material, stated: Fetters was engaged in his duties in behalf of Avsco when the collision occurred. It had been drizzling rain most of the day. The Hendricks sedan came across from the outer northbound lane and proceeded northward on the inner northbound lane immediately after crossing the intersection at Third Street. The collision occurred about a long city block north of the Third Street intersection. There was a line of traffic ahead of the Hendricks car.

"Q. Will you describe for us how the accident occurred? A. Well, after Mr. Hendricks got into lane number two, there was a line of traffic, when a car is in front of you you can't tell how many are in front of you, you can't see but two or three cars ahead of you, that is, you can see parts of them—we were traveling along and my first indication of any stopping was when I saw Mr. Hendricks' brake lights come on. At that instant, I applied my brakes and started to stop which resulted in skidding, and I was skidding approximately the same time he was."

Both Hendricks and Fetters were proceeding at about the same speed—25 to 30 miles an hour. Hendricks was between 42 and 54 feet ahead of Fetters. Hendricks' brake lights came on, Fetters removed his foot from the accelerator and applied his brakes, making a forceful application, more or less locking the wheels, in order to stop as quickly as possible. The Hendricks car

came to a stop about 15 feet ahead of Fetters and Fetters' station wagon slid into it; the Hendricks car (Fetters said) probably had more braking power than Fetters' station wagon, which slid about 25 feet after Fetters applied his brakes.

"Q. I would like to ask if you have a judgment as to the distance in which you could have brought that vehicle to a stop under the conditions that existed at the time and place, taking into account safety to yourself and passengers, traveling at a speed of thirty miles an hour? A. It would probably take thirty or thirty-five feet.

"Q. That would be your best judgment? A. Yes.

"Q. In that connection, do you have in mind the so-called reaction time, getting your foot off the accelerator on to the brake? A. Of course, that would probably take ten feet.

"Q. Do you add that to the number of feet you gave me? A. It would be plus that."

At the close of all of the evidence, plaintiff was permitted to amend her petition by interlineation to allege an added specification of negligence as against all of the then defendants, to wit: " 'in following too closely in traffic the vehicles ahead upon the roadway and particularly the vehicle of defendant Schaeffer and in failing to keep and maintain a sufficient distance between the said vehicles so that he could slacken his speed or stop or avoid colliding therewith upon the appearance of danger;' and the same wording following in paragraph (c) next following, the last line on the same page following the semicolon, to insert the same language with regard to the defendant, Fetters."

Defendants' contention that a submissible case was not made against them is thus stated in their brief: "Plaintiff's evidence shows that the skidding of the three cars involved on the wet pavement was the immediate and proximate cause of the

collision, which does not constitute negligence, for the reason such is as consistent with care as with negligence of the driver of an automobile and it may and as a matter of experience does occur without fault." In support of that contention they say that the evidence, all of which was adduced by plaintiff, shows the collision was caused by the skidding of the cars involved and that it could not be avoided; that when Fetters was confronted with the stopping car of Hendricks, he could do nothing other than what he did; that the evidence does not show excessive speed on the part of any of the three vehicles involved in the collisions; that Schaeffer was driving 25 to 30 miles an hour, Hendricks 20 to 28 miles an hour and Fetters 25 to 30 miles an hour; that plaintiff does not, in fact, complain of excessive speed or of any speed in her submission instruction; and that, consequently, the skidding of the three cars was the proximate cause of the collision which, in and of itself, does not constitute negligence.

■ In so contending, defendants cite and rely primarily upon Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 876; Heidt v. People's Motorbus Co., 219 Mo.App. 683, 284 S.W. 840, 841; Neely v. Freeze, 240 Mo.App. 1001, 225 S.W.2d 144, 154; Schaefer v. Accardi, Mo., 315 S.W.2d 230, 232. It is true that these cases state, and correctly so, that mere skidding of an automobile, in and of itself, does not necessarily constitute actionable negligence. But, defendants fail to note that while mere skidding alone does not of itself necessarily prove negligence, it well may become an element thereof, if the facts and circumstances in evidence show the skidding to have been caused in whole or in part by negligent operation of the vehicle. The cases are numerous "in which recovery is permitted in spite of (and sometimes because of) skidding where the evidence is not limited to skidding alone as the 'sole factual cause' of the occurrence." Rodefeld v. St. Louis Public Service Co., Mo., 275 S.W.2d 256, 259, and cases therein cited. In Rafferty v. Levy, Mo.App., 153 S.W.2d 765, in which the court had under consideration a situation fairly analogous to that here presented, it was said, loc.cit. 769: "It was the driver of the truck who turned the steering wheel which caused the truck to be violently forced from its position in the eastbound street car tracks into the path of the car in which plaintiff was riding as a passenger. He attempted this at a time when the truck was traveling 18 or 20 miles per hour. Under the circumstances then and there existing, a jury might very well say that this was negligence, and that the resulting skid or loss of control was not an independent intervening agency which relieved the defendants of all responsibility for the resultant injuries to plaintiff." See also Karch v. Stewart, Mo., 315 S.W.2d 131, 135; Evans v. Colombo, Mo., 319 S.W.2d 549, 551, wherein the legal effect of "skidding" of a motor vehicle is discussed.

The basic issue in this case is not whether defendants' station wagon skidded after its brakes were applied. It is whether, as pleaded in the amendment made to the petition and submitted to the jury, the collision here in question was proximately caused in whole or in part by negligence of Fetters in following so closely upon the Hendricks sedan that he could not, under the facts shown in evidence, avoid collision with it upon the appearance of danger of collision.

■ It is the common law duty of every motorist to keep a lookout ahead and laterally for other vehicles upon the highway to avoid injury and damages to others and he must be held to have seen what looking would have revealed. Evett v. Corbin, Mo., 305 S.W.2d 469, 472. It is also the common law duty of a motorist in the rear of another vehicle to operate his vehicle in such a position and to have it under such control as to be able to stop or take other appropriate measure to prevent running into the car ahead of it if the latter comes to a sudden slowing or stop; and failure of the operator of the vehicle

in the rear to exercise the highest degree of care in those respects is negligence. Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 249; Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 531; Terrell v. McKnight, 360 Mo. 19, 226 S.W. 2d 714, 717 [3]; Jones v. Rash, Mo., 306 S.W.2d 488, 493 [9].

The evidence essential to determination of whether a submissible case was made against the appealing defendants is not in dispute. The pavement on the bridge was obviously wet and slick; the station wagon driven by Fetters was 42 to 54 feet in the rear of the Hendricks car in a long line of traffic, in which the sudden slowing or stopping of any of the forward vehicles would, as any prudent driver should know, require similar action on each succeeding driver in the rear. These facts placed upon Fetters the duty to operate his station wagon with due regard to the effect those conditions would have upon his ability to stop if it should become necessary for him to do so. Both cars were traveling at approximately the same speed. Hendricks' brake lights showed up. Fetters *made a forceful application of his brakes, more or less locking the wheels of his station wagon.* It skidded not only the distance that had theretofore separated them, to wit: 42 to 54 feet, but it went on beyond that to the point where it collided with the stopped Hendricks car which had traveled, according to Hendricks, a distance of about 40 to 50 feet before it was stopped by collision with the Schaeffer pickup. Fetters testified that under the conditions there existing he could have stopped within 30 to 35 feet, plus an additional 10 feet for reaction time. (A remarkably conservative estimate, considering the fact that, according to his own testimony he was traveling at 36 to 44 feet per second. At the end of normal reaction time [three-fourths of a second] he would have traveled 27 to 33 feet before applying his brakes, which would have left only some 12 to 18 feet for him to have stopped within the distance within which he estimated he could

have done so. See Blashfield, Cyclopedia of Automobile Law, Vol. 9C, § 6237.)

We hold that a submissible case of defendants' negligence, as pleaded in the amendment made to the petition and submitted to the jury, was made.

Plaintiff's Instruction 3, of which defendants complain, reads:

"The Court instructs the jury that it is the duty of the driver of an automobile following another automobile to keep a lookout to observe the automobile ahead and its movements and to keep his automobile under control so that he would not run into the automobile ahead should it slow down or stop, and to keep his automobile a sufficient distance behind the automobile in front of him so as to avoid the danger of collision in case of the sudden stopping of the automobile ahead.

"You are further instructed that if you find from the evidence that on the occasion mentioned in evidence, Defendant Donald Fetters, then acting within the course and scope of his employment as agent, servant and employee of the defendant, Avsco, Incorporated, if so, did not exercise the highest degree of care in keeping a lookout to observe the automobile ahead and its movements, and in keeping his station wagon under control so that he would not run into the automobile ahead if it slowed down or stopped, and if you further find that Defendant Fetters did not exercise the highest degree of care to keep his automobile a sufficient distance behind the automobile operated by Defendant Hendricks so as to enable him to avoid colliding with the Hendricks automobile as it slowed and stopped, and if you further find that such conduct on the part of Defendant Fetters, if any, was negligent and that such negligence, if any, directly caused or directly contributed to cause plaintiff's injuries, if any, then your verdict should be in favor

of plaintiff and against Defendant Fetters and the defendant, Avsco, Incorporated."

(The court also correctly instructed the jury as to the burden of proof being upon plaintiff and the meaning of the terms "negligence" and "highest degree of care", as used in the instructions.)

Defendants say that the first paragraph of the instruction does not meet the requirements of Section 304.017 RSMo 1949, V.A.M.S. (to which revision all statutory references herein are made), in that it does not contain the precise wording set forth in the statute that the driver of the rear vehicle "shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such (preceding) vehicle and the traffic upon and the condition of the roadway"; and that neither does the instruction comply with § 304.010, in that it does not declare the precise provisions thereof requiring every operator of a motor vehicle to "drive the same in a careful and prudent manner" and to "exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person."

■ ■ Plaintiff did not plead the provisions of § 304.017. Instead the case was submitted under the common law duty of an operator of a motor vehicle and in accordance with the common law negligence pleaded in the last amendment made to the petition. It was the prerogative of plaintiff so to do. Brooks v. Mock, Mo., 330 S.W.2d 759, 766 [9, 10]. Statutory rules of the road merely set a minimum rather than a maximum standard of care. They are not preclusive of common law negligence unless the common law negligence pleaded and proved is less in degree than that set forth in their restrictive provisions. 60 C.J.S. Motor Vehicles § 268, p. 648. Defendants fail to point out and we have found no portion of the instruction that in any wise conflicts with the standards fixed by these statutes. When the instruction is read in the light of the statutes, it is seen that they are in harmony. The contention is without merit. Jones v. Rash, Mo., 306 S.W.2d 488, 493.

Defendants admit that the instruction "authorizes a verdict on the specific allegations of negligence inserted in plaintiff's amended petition at the close of the case," but they contend it is nevertheless erroneous in that it does not hypothesize facts necessary to be found by the jury to entitle plaintiff to a verdict. They insist that it furnishes no guide in determining the movements of the car ahead, and "what would constitute 'keeping his station wagon under control' and keeping his automobile 'a sufficient distance behind the automobile operated by defendant Hendricks,' nor are there any facts required to be found by the jury that the automobile of Hendricks 'slowed and stopped' and 'such conduct on the part of defendant Fetters was negligent' "; that it does not identify plaintiff, her position, presence and location, or the position and location of the cars involved; and that it does not require a finding of the fact of collision between the Fetters station wagon and the Hendricks car.

■ Defendants admit that this action arises "out of a three car northbound in line automobile collision on the ASB Bridge." It should also be noted that they consented to the reading of Fetters' deposition, at which time their counsel stated, "I'm not going to object to it. That's the only evidence I have." In so stating, defendants in effect accepted his testimony as their theory of the facts; and his testimony is essentially in accord with that of plaintiff's other witnesses. When the testimony of Fetters, as set forth in the deposition, is considered in connection with the other testimony adduced by plaintiff, it is apparent that there is no divergent set of facts and circumstances shown in evidence, under one of which defendants would be liable and under one of which they would not be. Neither did defendants submit any instruction hypothesizing a fact situation different from that hypothesized in Instruc-

**252**

tion 3. In fact, the only instruction offered (and given) in their behalf dealt with the credibility of the witnesses. The issues for determination, therefore, were (1) did the jury believe the evidence adduced by plaintiff? (2) if so, were defendants negligent in the respects pleaded and submitted? and (3) if such negligence be found, was it a proximate cause of the collision and plaintiff's injuries?

We think it clear that plaintiff's Instruction 3 sufficiently advised the jury of the issues of law and facts they were called upon to determine. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500.

The point is not directly raised, but we do note that, standing alone, the first paragraph of the instruction merely defines the common law *duty* of the operator of the rear vehicle and omits the further common law prerequisite that the operator is to be found guilty of actionable negligence only if he fails to exercise the highest degree of care in performing that duty. When, however, the instruction is read in its entirety it cannot be said to be prejudicially erroneous in that respect. This court has recently so held in Jones v. Rash, Mo., 306 S.W.2d 488, 493, wherein a series of cases affirming quite similar instructions were reviewed and held to be not prejudicially erroneous. See also Miller v. Riss & Co., Mo., 259 S.W.2d 366, 370. But again we direct attention to the peril of giving verdict-directing instructions containing abstract declarations of law unless it appears that they are further amplified as clearly to show them not to be misleading.

■ And finally, with reference to defendants' contention that the admission into evidence of photographs of plaintiff lying in bed in traction devices in the hospital was prejudicial. These photographs show merely the position of plaintiff as she lay in bed in such devices. They definitely are neither gruesome nor shocking. Generally, the admission of such evidence is within the judicial discretion of the trial court. But, where it is shown that photographs or other exhibits are of such a nature as to be prejudicial beyond their reasonable merit as evidence necessary to proper proof of some substantial element of the offeror's case, we should not hesitate to so declare. Faught v. Washam, Mo., 329 S.W.2d 588, 600. However, in this case, the exhibits are so far removed from that category as to negative any possibility of prejudice in their admission. Indeed, defendants are not in a position to assert otherwise. In their brief, they direct our attention to the fact that, if it be determined that a submissible case was made against them, they want no new trial on the issue of damages. The contention of prejudicial error in the admission of the photographs is without merit.

The judgment is affirmed.

All concur.