**Robert SUNDERMEYER, Respondent,**

**v.**

**Raymond LENTZ and Armour Agricultural Chemical Company, Appellants.**

**No. 50346.**

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1964.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 11, 1965.

John L. Rooney, Rooney, Webbe & Davidson, William L. Mason, Jr., St. Louis, for respondent.

Gerald D. Morris, St. Louis, for appellants.

PRITCHARD, Commissioner.

The automobile of plaintiff was struck in the rear by the truck of defendant,

Armour Agricultural Chemical Company, being operated by defendant, Lentz. Plaintiff recovered a $16,000 verdict. Defendants appeal from the judgment entered in accordance with the verdict against them.

■ Defendants first say that plaintiff failed to make a submissible case against them. We shall, therefore, in following established procedure, set forth the facts in their light most favorable to plaintiff. We disregard defendants' evidence except to the extent that it aids plaintiff. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311, 312 [1]. The following facts, which the jury reasonably could have found, bear upon plaintiff's submitted hypothesis of his case in his Instruction No. 4 that Armour's truck, being driven by Lentz, was following plaintiff more closely than was reasonably safe and prudent under the circumstances.

On October 5, 1960, a clear day, between 8:30 and 8:45 a.m., plaintiff was driving west on Highway 66 to his work. Prior to the collision plaintiff had been moving continuously at a speed of about 40 miles per hour. When he was 300 to 400 feet east of the point of impact by the truck with the rear of his automobile, and while he was going upgrade to the crest of the hill before he reached the downslope where the collision occurred, plaintiff saw a school bus coming toward him. The school bus had at its top two dark amber lights which were flashing back and forth. He continued to watch the bus; there was no traffic in front of him within the last 300 feet before the impact took place; and he was not then aware of any traffic behind him. Plaintiff was then traveling in the north lane of Highway 66, which was a dry concrete pavement of two lanes. There was a shoulder on plaintiff's right about 10 feet wide. At the time plaintiff observed the bus it was 50 to 100 feet west of the point of impact. Plaintiff then took his foot off the accelerator of his automobile. Thereafter the school bus came to a stop on the pavement. Plaintiff's

speed then was 15 to 20 miles per hour and he was 50 to 100 feet from the point of impact. There were three children (of witness, Mrs. Faller) standing by a driveway on the south side of the highway where the bus stopped to permit them to board it. Plaintiff saw a "stop" signal facing him on the left side of the bus, at the level of the driver. Plaintiff applied his brakes when the school bus stopped and glanced in his rear-view mirror and saw some type of vehicle. He did not know what kind of vehicle it was or how far it was behind him.

Plaintiff brought his vehicle to a gradual halt and stopped opposite a driveway which was on the south side of the highway, or just a little east of it. Plaintiff sat there about 5 seconds and then received a terrific jolt from the rear. The jolt moved plaintiff forward 15 to 20 feet toward the center of the bus, but parallel to it. At the time of the collision, plaintiff had his foot on the brake. After the impact the driver of the truck which struck plaintiff's vehicle came to the door thereof and identified himself as defendant, Raymond Lentz.

Interrogatories addressed to Armour were answered that Raymond B. Lentz was in its employ on October 5, 1960. Lentz was making a delivery in Armour's truck to one of its customers when the collision occurred. The truck Lentz was driving was a 1957 GMC, equipped with four-wheel hydraulic brakes in good condition.

Defendant Raymond Lentz testified at the trial that he was involved in a collision of a Chevrolet truck he was driving with the 1958 Chevrolet automobile of plaintiff on October 5, 1960. He first saw the Chevrolet automobile ahead of him about two miles from the place of impact. Lentz remained behind plaintiff about 3 car lengths, 45 to 50 feet, for a majority of the time, at a highest speed of 40 to 45 miles per hour. The school bus was seen by Lentz near the scene of the collision when it was still moving and Lentz was 200 to 250 feet away from it. At that time

3 car lengths still separated the truck and plaintiff's automobile, and Lentz was then moving at 30 miles per hour. According to Lentz, plaintiff was then going at about the same speed. Thereafter, Lentz noticed the stop lights on the school bus blinking on and off. He also saw some children standing alongside the road on the south side. He saw the lights of plaintiff's automobile suddenly going on and its back end went upward. Plaintiff stopped before the school bus stopped, and when Lentz first saw plaintiff's brake lights go on, he "slammed" on his truck brakes. Lentz was still 3 car lengths behind at a speed of 25 miles per hour. Lentz came into contact with plaintiff's automobile at about 5 miles per hour, and moved plaintiff forward 5 or 6 feet. The truck bed was three fourths loaded with sacks of fertilizer. At 30 miles per hour Lentz could have stopped between 80 and 85 feet; 75 feet separated Lentz from the point of impact at the time he saw plaintiff's lights go on. Plaintiff could have been stopped for 2 or 3 seconds before the impact.

Portions of Lentz' deposition were offered by plaintiff and received in evidence as admissions against interest. Upon motion the trial court ruled that the offered portions of the deposition were admissions against defendant Lentz' interest only, and so instructed the jury. See Davis v. Sedalia Yellow Cab Company, Mo.App., 280 S.W.2d 869, 871 [2]. The pertinent parts of the deposition are that Lentz was driving a delivery truck, the bed of which was 14 feet long. He left Armour's plant around 7:00 o'clock in the morning on October 5, 1960, with a truckload of fertilizer, described by him as a heavy load, being normal size 100 pound bags piled about 4 feet high and covering three fourths of the truck floor. Under the circumstances existing at the scene, Lentz could stop his truck in about 50 feet at his speed of 30 miles per hour. Plaintiff was stopped in a matter of seconds—10 seconds—and plaintiff's lights went on for that 10 sec-

onds when he came to a stop. Lentz knew that plaintiff stopped because the school bus was there, and while he was applying the brakes on the truck he hit the rear of plaintiff's automobile.

Mrs. Shirley Faller lived in a house adjoining the scene of the collision. She saw the truck and plaintiff's automobile going along the highway at 40 miles per hour and with 3 car lengths between them. There was no change in the distance between the two vehicles at the time plaintiff started to slow down. Both the school bus and the automobile came to a stop at about the same spot. Mrs. Faller heard the screeching of tires or brakes, and witnessed the truck contacting the rear end of the automobile. She could see the driver of the truck starting to apply his brakes at a time when the vehicles were still 3 car lengths apart, and both vehicles were then traveling at a speed between 30 and 40 miles per hour; and plaintiff appeared to be not going to stop, but then he came to a sudden stop.

Defendants' argument under their Point I by which they challenge the submissibility of plaintiff's case is that plaintiff's evidence was that he was stopped for 5 seconds before his automobile was struck by the truck; that this time establishes that Lentz, at his speed of 30 miles per hour, was 225 feet to the rear of plaintiff's vehicle; that such distance (claimed to be conclusively established by plaintiff's testimony) would not support the charge that Lentz followed plaintiff's automobile more closely than was reasonably safe and prudent under the circumstances existing at the time; that plaintiff cannot take advantage of other evidence that Lentz was following 3 car lengths or 45 to 50 feet because that evidence is at war with his own testimony that he was stopped for 5 seconds; and that therefore plaintiff has not established the proximate cause of the collision as being that which was submitted in his verdict directing Instruction No. 4.

The rule is, as defendants contend, that a plaintiff may not have the benefit of evidence which contradicts or is at war with his own theory of the case. See Fisher v. Gunn, Mo., 270 S.W.2d 869, 874 [3–5]; Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 604; and Elliott v. Wescoat, Mo., 336 S.W.2d 649, 651 [1, 2]. No such situation, however, exists in this case. Plaintiff's testimony that he was stopped *about* 5 seconds is an estimate only. He is not bound by such *estimate* of time. McDonough v. St. Louis Public Service Company, Mo., 350 S.W.2d 739, 744 [3]. The jury could reject such estimate in view of what Lentz definitely testified to, and what Mrs. Faller corroborated, that he was 3 car lengths (45 to 50 feet) behind plaintiff at a speed of 30 miles per hour, it thus being inconceivable that Lentz at his speed would consume 5 seconds in traveling the distance, 75 feet, which separated Lentz from the point of impact at the time he saw plaintiff's lights go on. At 30 miles per hour, Lentz was traveling at 44 feet per second. His testimony was that plaintiff was stopped 2 or 3 seconds before the impact. It would take Lentz 80 to 85 feet to stop the truck at his speed under the circumstances; but only 75 feet separated him from the point of impact.

The *duty upon drivers of following* vehicles is imposed by our statute, § 304.017, RSMo 1959, V.A.M.S., the relevant portion of which is: "The driver of a vehicle other than those designated in section 304.044 shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway." Plaintiff pleaded the violation of this statutory duty in general terms, and there was no motion to make such pleading more definite and certain. Lentz saw the school bus, still moving, when he was 200 to 250 feet away from the point of impact. He thereafter saw the stop lights on the bus blinking on and off, and the children standing by the side of the road waiting to board the bus. He was thus put on a reasonable notice that plaintiff would be likely to stop for the bus. Yet he continued to follow plaintiff 3 car lengths or 45 to 50 feet behind him at such speed that he could not, by his own testimony (and did not), stop short of the place where he struck plaintiff's vehicle.

Considering all of the testimony: that of Lentz given at trial, his admissions in his deposition as against himself only; that of Mrs. Faller concerning the speed and distance between the two vehicles, together with all the other facts and circumstances in evidence, we hold that plaintiff made a submissible case against both defendants under said § 304.017. See Binion v. Armentrout, Mo., 333 S.W.2d 87, where it was held that a plaintiff (who was standing at the rear of a truck which had a flat tire and was parked as far as possible to the right on a two-lane pavement) made a submissible case under § 304.017 against defendant who was following another automobile 2 car lengths behind it and at a speed of about 25 miles per hour. See also Gooch v. Avsco, Incorporated, Mo., 337 S.W.2d 245, where plaintiff submitted his case under the common-law duty (held to be no less in degree than the *statutory duty* under said § 304.017) of defendants to exercise the highest degree of care in keeping a lookout to observe the automobile ahead and its movements, and in keeping the following vehicle under control, and at such distance behind, so that it would not run into the automobile ahead if it slowed down or stopped. The jury could reasonably conclude in this case that Lentz' action in following plaintiff's automobile 3 car lengths at a speed of 30 miles per hour, with other traffic, a loaded truck on a downslope was closer than was safe and prudent and the same constituted negligence which was the proximate cause of the collision. Point I is ruled against defendants.

Instruction No. 4, to which defendants direct several complaints, is as follows:

"The Court instructs the jury that it is the law in this State that no driver shall follow another vehicle more closely than is reasonably safe and prudent under the circumstances existing at the time.

"Therefore, you are further instructed that if you find and believe from the evidence that on the occasion shown to you in the evidence the plaintiff Robert Sundermeyer, was driving an automobile westwardly on the north side of U. S. Highway No. 66, if so, and approaching a point thereon opposite more or less the mailbox described in evidence, if so, and if you further find that the defendants, by and through the defendant Raymond Lentz driving the same, if so, were then and there operating a truck also westwardly on the north side of said Highway, and if so, and behind or east of the automobile driven by plaintiff, if so, and in the same lane for westbound traffic, if so, and if you further find that the automobile driven by plaintiff came to a stop at said point, if so, and in the same lane for westbound traffic in which it had been so driven, if so, and if you further find that prior to the plaintiff's automobile so coming to a stop, if it did, the said truck had been so following it for some 500 feet, if so, and at a distance of approximately 45 feet behind it, if so, and at a speed of 30 miles an hour, if so, and if you further find that the said truck was then and there carrying the load described in the evidence, if so, and if you further find that in so following plaintiff's automobile under such circumstances, if he did, the driver of defendants' truck followed plaintiff's automobile more closely than was reasonably safe and prudent under the circumstances existing at the time, and if you further find that said driver thereby failed to exercise the highest degree of care, and if you further find that he was thereby negligent, and if you further find that plaintiff was not negligent in any respect submitted in these instructions, and if you further find that while plaintiff's automobile was still so stopped, if so, a collision occurred between the front part of the truck and the rear part of the automobile, and if you further find that said collision was directly caused by the said negligence, if any, of the said driver of the truck, and if you further find that plaintiff sustained injury to his person as a direct result of said collision, then you are instructed that your verdict must be for the plaintiff, Robert Sundermeyer and against the defendants, Raymond Lentz and Armour Agricultural Chemical Company."

■■ The first of such complaints, embodied in Point II, is that Instruction No. 4 did not properly state the law in its paragraph 1. That paragraph does not use the language of § 304.017, supra, in that the clause is used, "under the circumstances existing at the time" rather than the statutory words, "having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway." Under the statute, which defines the duty of the driver of a following vehicle, the matters for the jury in this case which bore upon the ultimate issue of whether Lentz followed more closely than was reasonably safe and prudent (so as to constitute negligence) were: (1) Plaintiff's speed—about the same as Lentz, 30 miles per hour (plaintiff testified that after he lifted his foot from the accelerator, his speed was 15 to 20 miles per hour); (2) the existence of the traffic upon the roadway—Armour's truck, plaintiff's automobile, and the oncoming slowing school bus with its stop lights blinking on and off; and (3) the condition of the roadway—the two-lane, dry concrete pavement on the downslope where the collision (and the following of plaintiff by Lentz) occurred. There was no divergence of these facts which were to be adverted to by the jury in determining whether Lentz was

following so closely as to constitute negligence. No others are mentioned in the statute as elements of negligence. It was unnecessary to make a hypothesis of these uncontroverted facts in either the preliminary statement of the statutory law (which we deem to be substantially in the language of the statute and therefore sufficient, Miles v. Gaddy, Mo., 357 S.W.2d 897, 902 [5], and May v. Bradford, Mo., 369 S.W.2d 225, 228 [7]), or in the subsequent hypothesis of facts submitted for the jury to find, Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500 [2], and the concurring opinion appearing at page 502 thereof. See also Welch v. McNeely, Mo., 269 S.W.2d 871, 877 [15, 16]. The jury was not misled by the use of the words "under such circumstances" and "under the circumstances existing at the time" as they variously appear in Instruction No. 4. Block v. Rackers, Mo., 256 S.W.2d 760, 763 [4]. The jury was not given a roving commission to find any negligent act of Lentz upon which to base a verdict. It was limited to a finding that Lentz, in following plaintiff approximately 45 feet and at a speed of 30 miles per hour, was negligent under the circumstances existing at the time.

■ Defendants cite Joffe v. Beatrice Foods Company, Mo.App., 341 S.W.2d 880, 884, upon the propositions that the mere fact that one vehicle is moving in close proximity to, and keeping up with another, does not of itself constitute negligence; and that the driver of a following vehicle is not charged with anticipating an emergency created by the negligence of the plaintiff under circumstances that could not have been reasonably anticipated by him as a driver exercising the highest degree of care. Defendants do not suggest how these propositions affect the propriety of the giving of Instruction No. 4 to the jury. It would seem that, if established as a matter of law, an unanticipated negligent act of the driver of a forward vehicle would relate to the submissibility of his case. If not so established, then the hypothesis of such negligent act would relate to a defense to be submitted in

an instruction to the jury. Such hypothesis was here made that plaintiff made a sudden stop without an adequate and timely warning in defendants' given Instructions Nos. 5 and 6. Whether plaintiff committed an unanticipated negligent act in this case was for the jury to determine.

■ By Point III, defendants say that the court erred in giving Instruction No. 4 because "(A) Plaintiff's own testimony, by which he is bound, was that he made a gradual stop and had been stopped 5 seconds when he was struck from behind by defendant's truck"; that such theory is at war with the submitted theory that defendant was negligent for following more closely than was reasonably safe and prudent. We have discussed the matter that plaintiff was not bound by his *estimate* of the time he was stopped, and that under all the other facts and circumstances—the distance between the vehicles, their speeds, and the condition of the roadway, the jury could find that Lentz was following more closely than was safe and prudent. The contention is without merit and is overruled.

■ Under "(B)" of Point III, defendants complain that Instruction No. 4 required the jury to find that "plaintiff came to a stop" without qualifying the kind of stop plaintiff made or the length of time plaintiff was stopped. The argument is that plaintiff testified that he made a gradual stop and was stopped 5 seconds before the collision, and defendants' evidence showed that he made a sudden stop on the traveled portion of the roadway. Say the defendants, the instruction was fatally defective in that it permitted a verdict for plaintiff regardless of which version the jury believed. Defendants cite Doggendorf v. St. Louis Public Service Company, Mo.App., 333 S.W. 2d 302. That case may be distinguished in that it submitted upon the rear-end collision doctrine defined as " * * * the doctrine or rule of law which recognizes that if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in

which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle." Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, 362 [3]; Jones v. Central States Oil Co., 350 Mo. 91, 164 S. W.2d 914, 917 [2]. In the Doggendorf case the rear-end doctrine was extended to a vehicle which was at rest, but an instruction was condemned because it failed to submit to the jury a hypothesis of the length of time it was stopped, where that time was in sharp dispute. Here, the negligence submitted was that Lentz was following more closely than was reasonably safe and prudent. That was the gravamen of the negligence charged, and it is not an element of that negligence under § 304.017, supra, that plaintiff was stopped or for how long. This statute, setting forth the duty of a following motorist, is but a codification of the common law. See 60 C.J.S. Motor Vehicles § 323, pp. 750, 751, and the there cited case of Peterson v. Minneapolis St. Ry. Co., 226 Minn. 27, 31 N.W.2d 905, where a statute of the same wording as said § 304.017 was held to be a codification of the common law of that state. See also 85 A.L.R.2d 617. It is with that premise that the case of Gooch v. Avsco, Incorporated, supra, becomes here applicable. That case involved a common-law submission of the duty of the driver of an automobile following another automobile to keep his automobile a sufficient distance behind the automobile in front of him to avoid colliding with it if it slowed or stopped. At loc. cit. 337 S.W.2d 249 [3, 4], the court stated, "It is also the common law duty of a motorist in the rear of another vehicle to operate his vehicle in such a position and to have it under such control as to be able to stop or take other appropriate measure to prevent running into the car ahead of it *if the latter comes to a sudden slowing or stop;*

and failure of the operator of the vehicle in the rear to exercise the highest degree of care in those respects is negligence. (Citing cases)" (Emphasis added.) Although plaintiff's evidence tended to show that he slowed and came to a stop gradually, and defendant Lentz' evidence tended to show that he stopped suddenly, under plaintiff's theory that Lentz was following more closely than was prudent and safe under the circumstances, plaintiff was not required, as an element of his claim to relief, to submit to the jury for a finding the manner in which he stopped his automobile. In Hooper v. Conrad, supra, loc. cit. 260 S.W. 2d 500, the quote is made, " 'The Yates case (Yates v. Manchester, 358 Mo. 894, 217 S. W.2d 541) and cases following the Yates case are not to be read or construed as requiring the submission of facts which are not necessary or essential to a finding upon the issue or issues of negligence specifically submitted. Le Grand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706.' " (Parenthetical citation added.) As stated, defendants' instructions submitted that plaintiff stopped suddenly, without a timely, adequate warning, as a defense. Plaintiff's Instruction No. 4 properly negatived his own contributory negligence "in any respect submitted in these instructions." Nor does Point III (C), under which the argument is that Instruction No. 4 gave to the jury a roving commission and allowed it to base a verdict on speculation or surmise, avail defendants. The hypothesis was, as stated above, sufficient for a finding of the statutory standard of duty, and omission thereof, of Lentz in following plaintiff.

■ By Point III(D), defendants say that the submission in Instruction No. 4, that the truck "was then and there carrying the load described in evidence," was prejudicial error. The contention is that there was no substantial evidence in the case upon which the jury could decide what the load was; that the required finding was unsupported by the evidence and constituted a comment on the evidence. At the trial, Lentz testified that the truck bed was three

fourths loaded with sacks of fertilizer. On deposition (admissible against Lentz only), he testified that he had a truckload of fertilizer, a heavy load, being normal size 100 pound bags piled about 4 feet high and covering three fourths of the truck floor. On direct examination at the trial he testified that at his speed of 30 miles per hour he could have stopped between 80 to 85 feet; on deposition, under the circumstances at the scene, he testified that he could have stopped in 50 feet at his speed of 30 miles per hour. The jury was adequately advised in Instruction No. 4 as to circumstance of the load on the truck to find the ultimate act of negligence submitted: following more closely than was safe and prudent under the circumstances existing. Point III and all of its subdivisions are overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.